## LOUISIANA RY. & NAV. CO. OF TEXAS v. REYNOLDS. (No. 3023.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 12, 1925. Rehearing Denied Dec. 17, 1925.)

1. Negligence ⊚➾63—Unavoidable accident complete defense.

Unavoidable accident is complete defense against liability for injuries.

2. Master and servant ⊚➾97(1)—Injury to section hand from falling cross-tie held due to accident.

Injury sustained by section hand when cross-tie fell, due to slipping of fellow workman, held accident and not result of negligence in failing to provide sufficient workmen, or in directing that tie be carried on shoulders.

Appeal from District Court, Camp County; R. T. Wilkinson, Judge.

Action by Theodore Reynolds against the Louisiana Railway & Navigation Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

The appellee sued for damages for personal injuries sustained while he, employed as a section hand, was loading cross-ties on a flat car. A flat car was left on appellant's side track at Fakir switch, to be loaded with cross-ties by the regular section crew. The cross-ties were stacked in tiers about 15 feet from the flat car. The appellee and Will Thomas, both members of the section crew, were carrying on their shoulders a cross-tie to the flat car, the appellee in front and Will Thomas behind, and for some cause, undertaken to be explained in the evidence, the end of the cross-tie resting on the shoulder of Will Thomas fell to the ground, causing the other end resting on the appellee's shoulder to fly up and violently strike the side of the head of the latter, fracturing the mastoid bone. The petition alleges as negligence, substantially stated, (1) the failure of the defendant company to provide a sufficient number of laborers to properly and safely do the work at hand; and (2) the act of the foreman, in view of the existing circumstances, in directing and requiring the appellee and Will Thomas to carry the cross-ties on their shoulders instead of raising and resting them on their hips, as sometimes done by them; and (3) the failure of Will Thomas to warn or notify appellee that he intended to drop or let fall his end of the cross-tie. The appellant, besides general denial, pleaded assumed risk, and that the fall of the cross-tie and the consequent injury to appellee was a pure accident. The case was submitted to a jury on a general charge, and the verdict was in favor of the appellee.

As it appears from the statement of facts, the section foreman, the appellee, and Will Thomas constituted the section crew at work at the place in question. It was in January, 1924, and the ground at the place between the flat car and the six stacks of cross-ties, as admittedly shown, "was slippery underfoot" and "it was sticky." It had recently rained. The ties were fresh, green red oak ties, each one weighing approximately 200 pounds. The appellee was just above 21 years old, and had been working for appellant, as a section hand, about 8 months, doing the work of loading and unloading cross-ties, spiking and carrying cross-ties, and putting them in the track. Will Thomas was 28 years old and weighed "about 140 pounds." He had been employed as a section hand for about a year and a half, doing the usual work, the same as the appellee did. In loading ties, two men were usually assigned to the work of carrying a cross-tie from the stack to a car, as appears, "sometimes three men would handle the ties, if we had enough of them; the third man working in the middle." The section foreman testified:

"The ties we were loading were green red oak, right out of the woods, weighing approximately 200 pounds. It was about 15 feet from the stacks of ties to the flat car. No; I do not know that I had asked for help for that particular time. I had asked for help to load ties at Fakir. It is a tie yard, and I had

loaded ties there before. It was a heavy job, and we needed more men. I had gotten a letter stating that other men had done it before, and that they didn't see why I could not do the same thing. No; I didn't regard those two men sufficient enough to load those ties. I needed other men to help me. * * * The common way of carrying ties from the pile to the car is on the shoulders. Two men handle the tie. If I had a dozen men, two men would carry a tie. Those ties were green and heavy, and there were some long ties in the stack. It is common to have long ties in a stack. If I had enough men I would put enough on those big ties to keep them from being strained. That was a heavy tie, but they didn't have much trouble in picking it up. They had to carry it about 15 feet. I stacked the ties as they put them on the car. I would handle and lift them. Neither of them got up on the car to help me. I stacked it myself, with their help on the ground sliding it up on the back end."

According to the evidence in behalf of the appellee, his injury happened, and the cause of it, as follows: The appellee testified:

"We were at Fakir switch. We were loading ties on a flat car, about 15 or 20 feet from the ties. We would brace the tie against our hips and hold it with both hands. We had been carrying them resting on the hips. We had the car just about half loaded when Mr. Miller, the foreman, on top the car to receive the ties as we brought them up, jumped down from the car and instructed us how to carry the ties on our shoulders—said he wanted to show us how to carry the ties. He told the Thomas boy to get up on the car, and helped me carry 10 ties; then he got back up on the car and put Thomas with me. After the foreman told us how to carry them, I went and picked up Thomas' end of the tie and rested it on his shoulder and then I got my end. His end rested on his left shoulder and mine on the right shoulder. We walked east, each of us facing east, and my back to him. We had carried about 10 ties, and the next time, just as we had started off with a tie, he dropped his end of the tie, and I couldn't get out of the way. The first I knew of the tie being dropped was when it hit me on the head."

Fred Neal, for appellee, testified:

"I saw the tie drop. I was just outside the fence from the place. Thomas got his end of the tie up on his shoulder first and then Theodore [appellee] got his end up on his shoulder. Theodore was in the front. I was looking at them at the time. They made one step toward the car when Thomas dropped his end of the tie, let his end fall, causing the other end of the tie on Theodore's shoulder to strike against his head. Thomas did not fall at the time." .

The appellant's evidence shows, as testified by Will Thomas:

"At the time of his injury Reynolds [appellee] was carrying ties with me. Reynolds was in the front, with his back to me and the tie on his right shoulder, and I was behind him with the tie on my left shoulder. My left foot slipped and caused the tie to turn and go off on the ground. It was raining when we were loading them. After the tie fell, we put it on the car and had no trouble in picking it up. The weight of the tie did not cause me to drop it. My foot slipped, and when my foot slipped the tie rolled—it was a crooked tie. I don't know how many steps we had taken when the tie fell—had only gone a short distance when my foot slipped and caused the tie to fall. I didn't say anything when the tie rolled off. It was wet along there, muddy where I slipped. It was crawfish land, and it was raining and muddy. There was nothing more than just the ground that caused me to slip, any more than anybody else."

The section foreman testified:

"I didn't see Reynolds [appellee] at the very minute that the injury happened. I didn't see Bill [Thomas] slip. I say he slipped because the prints on the ground showed that he had slipped. I didn't see him fall. He wasn't standing erect when the tie rolled over to Reynolds' head. When I looked just part of the tie was falling. I don't believe I heard anything said at the time the tie dropped. Water stands there on the ground, and it is called crawfish land; it was sticky. * * * They were carrying the ties on their hip at first, and then I got off the car and instructed them to carry them on their shoulders. The common way of carrying ties from the pile to the car is on the shoulder. Two men handle the tie."

The evidence sufficiently warrants the finding of the jury as to the amount of damages awarded.

McMahon & Dohoney, of Greenville, for appellant.

C. E. Bryson, of Pittsburg, and Butler, Price & Maynor, of Tyler, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The court in the charge submitted in separate paragraphs the three distinct grounds of negligence alleged in the petition, and authorized a verdict in favor of appellee upon a favorable finding by the jury upon "either or all" of the paragraphs. The appellant entered timely exception to the charge, and requested a peremptory instruction, which was refused, because the evidence established that the injury to appellee was an accident. We conclude that the appellant's contention should be sustained, as the circumstances preclude any other rational conclusion than that the injury was an accident. The injury, as shown, was not in consequence of any of the alleged grounds of negligence. Neither the weight of the cross-tie nor the direction or method of carrying it—by two men only, and on their shoulders instead of on their hips—brought about or contributed to the sudden and unexpected falling to the ground of the rear end of the cross-tie. It occurred, as admittedly shown, by reason of Will Thomas' foot slipping on the muddy or "slick" ground, and which caused the cross-tie to fall off his shoulder to the ground; he did not intend to slip, and he did not foresee that he would slip in time to avoid it or give

warning. The cross-tie fell off of Thomas' shoulder, when his foot slipped, suddenly and quickly. It was an unintended and unexpected occurrence on the part of Will Thomas, which produced hurt to appellee, and the slipping therefore was accidental. An unavoidable accident is a complete defense against liability. Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534. If the evidence had met the allegation that Will Thomas had negligently dropped or let fall his end of the cross-tie, there would have been a different case.

The judgment is reversed, and judgment is here entered in favor of appellant; the appellee to pay costs of the trial court and of the appeal.